UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NELSON ALGARIN,

                                        Plaintiff,

                -against-

NYC HEALTH + HOSPITALS CORP.,

                                        Defendant.

Case No. 1: 22-cv-8340 (JLR)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

The historic COVID-19 global pandemic has resulted in immense fatalities world-wide, including over a million COVID-19 related deaths in the United States as of November 9, 2022.[1] This case is one of several cases filed against New York healthcare employers who implemented the mandatory COVID-19 vaccination rules promulgated by the New York State Department of Health in 2021.

Plaintiff Nelson Algarin ("Plaintiff" or "Algarin") seeks redress against Defendant NYC Health + Hospitals Corporation ("Defendant" or "H+H") because he was placed on administrative leave and his employment was ultimately terminated in 2021 for failure to comply with H+H's mandatory COVID-19 vaccination policy in 2021. *See generally* ECF No. 1 ("Compl."). Plaintiff brought five causes of action against Defendant, alleging claims under (1) Title VII of the Civil Rights Act of 1964; (2) 42 U.S.C. § 1983 for violations of the Free Exercise Clause of the First Amendment, as applied to the states through the Fourteenth Amendment; (3) 42 U.S.C. § 1983 for violations of the Equal Protection Clause of the

---

[1] Centers for Disease Control and Prevention, COVID-19 Data Review, https://www.cdc.gov/coronavirus/2019-ncov/science/data-review/index.html (last visited June 23, 2023).

Fourteenth Amendment; (4) Section 296 *et seq*. of New York State Executive Law prohibiting religious discrimination; and (5) New York City Administrative Code § 8-107 *et seq*. prohibiting religious discrimination. *Id.*

H+H moved to dismiss the complaint with prejudice for failure to state a claim under Federal Rule of Civil Procedure ("Rule") 12(b)(6). *See generally,* ECF No. 10 ("MTD").[2]  In response, Plaintiff voluntarily dismissed his Equal Protection claim but otherwise opposes this motion.  ECF No. 13 ("Opp.") at 1 n.1.  For the following reasons, Defendant's motion to dismiss the remaining four claims is GRANTED.[3]

## BACKGROUND[4]

### I.  Plaintiff's Termination of Employment from H+H

Plaintiff worked for more than 32 years as an internet technology ("IT") professional at H+H.  Compl. ¶ 13.  H+H is a New York public benefit corporation that runs New York City's

---

[2] H+H's notice of motion states that dismissal is sought under Rule 12(b) for failure to state a claim and because the claims are time barred.  MTD.  The Court will not address the timeliness of the claims because H+H did not present any arguments in its brief regarding that ground, or even mention it.

[3] For purposes of this Opinion and Order, relevant filings include: Plaintiff's Complaint, ECF No. 1 ("Compl." or "Complaint"); Defendant's Motion to Dismiss, ECF No. 10 ("MTD"); Defendant's Memorandum of Law in Support of Defendant's Motion to Dismiss the Complaint, ECF No. 11 ("Br."); Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss, ECF No. 13 ("Opp."); and Defendant's Reply Memorandum in Further Support of Defendant's Motion to Dismiss the Complaint, ECF No. 16 ("Reply").

[4] Unless otherwise noted, the facts stated herein are taken from the Complaint, which the Court accepts as true, and material referenced in the Complaint.  *See In re Amaranth Nat. Gas Commodities Litig.*, 730 F.3d 170, 176 (2d Cir. 2013).  Plaintiff has not objected to Defendant's reliance in its motion on items of public record regarding COVID data, executive orders, and regulations.  The Court will take judicial notice of public records and documents from official government websites pursuant to Fed. R. Evid. 201.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (in evaluating Rule 12(b)(6) motion, "courts must consider the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"); *Staehr v. Hartford Fin. Servs. Grp.*,

municipal hospitals; it employed more than fifteen employees at all relevant times.  *Id.* ¶ 12;

Uncons Laws of NY, [N.Y.C. Health and Hospitals Corporation Act ch 1016/69, §4];  *Rookard*

*v. Health & Hosps. Corp.*, 710 F.2d 41, 43 (2d Cir. 1983).  Prior to and leading up to the

COVID-19 pandemic, Plaintiff claims that he worked to ensure that H+H maintained a well-

operated and secure healthcare system, but did not have contact with patients or healthcare

professionals.  Compl. ¶ 13.

After Plaintiff took some accrued paid time off toward the end of March 2020 when the

effects of COVID-19 continued to increase in severity, he resumed his duties at H+H in

December 2020.  *Id.* ¶¶ 14, 15.  Each day he would park in the parking garage, enter the facility

through the back entrance, take the stairs to his floor, complete a Point of Entry Screening, and

then enter the IT department suite, whose doors remained closed.  *Id.* ¶¶ 15, 16.  He worked from

his cubicle and alleges that he "did not come into close proximity or contact with his co-

workers."  *Id.* ¶ 16.

In August 2021, H+H implemented a weekly COVID-19 testing requirement and

Plaintiff complied with the requirement.  *Id.* ¶ 17.  On September 8, 2021, H+H informed

Plaintiff that he had to be vaccinated as a condition of his employment.  *Id.* ¶ 19.  Plaintiff

requested a religious accommodation and informed H+H that "[a]s a practicing Christian, [his]

sincerely held religious beliefs prevent him from receiving a COVID-19 vaccine that was tested,

---

*Inc.*, 547 F.3d 406, 426 (2d Cir. 2008) ("[M]atters judicially noticed by the District Court are not
considered matters outside the pleadings.") (citing 5 Charles Alan Wright & Arthur R. Miller,
Fed. Prac. & Pro. § 1366 & n. 33 (3d ed. 2004)); *Giraldo v. Kessler*, 694 F. 3d 161, 164 (2d Cir.
2012) (taking "judicial notice of relevant matters of public record"); *Shmueli v. City of New
York*, 424 F.3d 231, 233 (2d Cir. 2005) (taking judicial notice of matters of public record in
evaluating motion to dismiss).

developed, or produced with fetal cell lines derived from procured abortions." *Id.* ¶ 20.  Plaintiff

stated that he was willing to continue to participate in weekly COVID-19 testing.  *Id.* ¶ 21.

While H+H initially approved Plaintiff's accommodation request, on September 14,

2021, Plaintiff alleges that H+H informed him that weekly testing was not sufficient and that he

would be placed on unpaid leave because he had not complied with "the NYS Mandate Covid-19

Vaccination," set forth in N.Y. Comp. Codes R. & Regs. ("N.Y.C.C.R.R.") Tit. 10, § 2.61 (2021)

("Section 2.61," the "Rule," the "State Mandate").  Compl. ¶ 24.  On September 15, 2021, H+H

sent follow-up correspondence reiterating that Plaintiff was "placed on unpaid leave" because he

"failed to comply with the New York State Vaccine Mandate," or Section 2.61.  *Id.* ¶¶ 37, 42.

While not consequential for purposes of this motion, the precise date upon which Plaintiff was

actually placed on unpaid leave is somewhat unclear as the Complaint also alleges that H+H

"placed [Plaintiff] on unpaid leave on September 27, 2021."  *Id.* ¶ 38.

On November 16, 2021, H+H advised Plaintiff that his "accommodation" of unpaid leave

would expire on November 26, 2021 and that he could be vaccinated, voluntarily resign, or his

employment would be terminated as of November 29, 2021.  *Id.* ¶ 43.  On November 23, 2021,

Plaintiff again requested an accommodation based on his religious beliefs to which H+H did not

respond. *Id.* ¶ 45.  On November 29, 2021, Plaintiff's employment was terminated.  *Id.*

## II.  New York State Rule Section 2.61

Section 2.61 was initially published as an emergency regulation by the New York State

Department of Health ("DOH") and thereafter adopted by the Public Health and Health Planning

Council of the DOH on August 26, 2021, requiring healthcare facilities like H+H to

"continuously require personnel to be fully vaccinated against COVID-19, with the first dose for

current personnel received by September 27, 2021 for general hospitals and nursing homes, and

by October 7, 2021 for all other covered entities absent receipt of an exemption."  10

N.Y.C.C.R.R. § 2.61(c); *Med. Pros. for Informed Consent v. Bassett*, 185 N.Y.S.3d 578, 581

(N.Y. Sup. Ct. 2023) (describing enactment history).  Under Section 2.61(a)(2), "personnel" are

defined as "all persons employed or affiliated with a covered entity, whether paid or unpaid,

including but not limited to employees, members of the medical and nursing staff, contract staff,

students, and volunteers, who engage in activities such that if they were infected with COVID-

19, they could potentially expose other covered personnel, patients or residents to the disease."

*Id.* § 2.61(a)(2).  The rule provides a medical exemption for those who provide a certification

from a physician or a nurse practitioner that the COVID-19 vaccination is detrimental to their

health "based upon a pre-existing health condition" which would exempt the individual until the

immunization is "found no longer to be detrimental to such personnel member's health."  *Id.*

§ 2.61(d)(1).  There is no religious exemption in Section 2.61.

There has been significant litigation regarding Section 2.61 (and other COVID-19

mandatory vaccination requirements).  On September 12, 2021, the District Court for the Eastern

District of New York denied requests for a temporary restraining order and a preliminary

injunction brought by healthcare workers to enjoin the enforcement of Section 2.61 for lack of a

religious exemption.  *See We The Patriots USA, Inc. v. Hochul*, No. 21-cv-4954 (WFK), 2021

WL 4048670 (E.D.N.Y. Sept. 12, 2021).  Conversely, on September 14, 2021, the District Court

for the Northern District of New York granted a motion for a temporary restraining order,

restraining the State from enforcing any requirement that employers deny religious exemptions,

and entered a preliminary injunction to that effect on October 12, 2021.  *See Dr. A v. Hochul*, 21-

cv-1009 (DNH), 2021 WL 4734404 (N.D.N.Y. Oct. 12, 2021).  The Court of Appeals for the

Second Circuit promptly considered appeals from both injunction decisions in tandem.  *See We*

*The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 272, 280 (2d Cir. 2021).  On October 29, 2021 from the bench, and later in a written opinion on November 4, 2021, the Second Circuit reversed the order of the Northern District of New York and affirmed the order of the Eastern District of New York.  *Id.* at 273.  The Second Circuit held that the plaintiffs in *We The Patriots USA* were not likely to succeed on their federal constitutional claims that Section 2.61 violates (a) the Supremacy Clause based on preemption by Title VII, (b) the Free Exercise Clause under the First Amendment, or (c) the plaintiffs' fundamental rights under the Fourteenth Amendment.  *Id.*

In the context of its Title VII analysis, the Second Circuit noted that while Section 2.61 does not contain a religious exemption, it "does not require employers to violate Title VII because, although it bars an employer from granting a religious *exemption* from the vaccination requirement, it does not prevent employees from seeking a religious *accommodation* allowing them to continue working consistent with the Rule, while avoiding the vaccination requirement." *Id.* at 292.  It held that the employer could provide an employee with "a reasonable accommodation that removes the individual from the scope of the Rule," such as telemedicine. *Id.*  Because the District Court in the Northern District of New York erroneously opined broadly on remand that Section 2.61 "does not prevent employees from seeking a religious accommodation allowing them to continue working consistent with the Rule, while avoiding the vaccination requirement," the Second Circuit further clarified its November 4, 2021 ruling on November 12, 2021.  *We The Patriots USA, Inc. v. Hochul*, 17 F.4th at 370 (quoting *We The Patriots*, 17 F.4th at 292).  In its November 12, 2021 opinion, the Second Circuit admonished that its prior opinion should not be read to mean that "employers may grant religious accommodations that allow employees to continue working, unvaccinated, at positions in which they 'engage in activities such that if they were infected with COVID-19, they could potentially

expose other covered personnel, patients or residents to the disease.'" *Id.* (quoting Section 2.61 in defining "personnel"). In other words, the Court opined that it is possible to have a reasonable accommodation based on religion if it takes the individual out of the scope of the Rule – such as by "employing them in a manner that removes them from the Rule's definition of 'personnel'" – which would allow the employee to remain unvaccinated while employed. *Id.* The Second Circuit noted, however, that employers are not obligated to grant any accommodation pursuant to Title VII that would cause an "undue hardship on the employer's business" and plaintiffs are not necessarily entitled to their preferred accommodations. *Id.* The Second Circuit closed its opinion by repeating and underscoring its holding – "if a medically eligible employee's work assignments mean that she qualifies as 'personnel,' she is covered by the Rule and her employer must 'continuously require' that she is vaccinated against COVID-19." *Id.* (quoting Section 2.61). This approach is consistent with the "longstanding" New York State requirement that medically eligible healthcare workers must be vaccinated against rubella and measles, with no religious exemption. *Id.* The United States Supreme Court denied *certiorari*, albeit with three dissenters. *See Dr. A v. Hochul*, 17 F.4th 266 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 2569 (June 30, 2022) (No. 21-1143).

Section 2.61 has also been subject to material litigation in New York state courts. On January 13, 2023, a Supreme Court in Onondaga County, New York, granted the request from an organization of medical professionals to enjoin the vaccination mandate in Section 2.61, holding that Section 2.61 is an *ultra vires* act of the New York State Department of Health. *Bassett*, 185 N.Y.S.3d at 585. The *Bassett* court held that the regulation exceeded the DOH's rule-making authority under the Public Health Law, violated the separation of powers doctrine, and was arbitrary and capricious. *Id.* This ruling was appealed and on February 27, 2023, the Appellate

Division, Fourth Department stayed the enforcement of the *Bassett* court's decision during the pendency of the appeal.  Exhibit, *Dennison et al. v. Bon Secours Charity Health System Medical Group, P.C. et al*, 7:22-cv-02929 (CS) (S.D.N.Y. Mar. 3. 2003), ECF No. 38-1.

Most recently, during a conference with the parties on May 31, 2023, Plaintiff provided the Court with a May 24, 2023 letter from the New York State Department of Health stating that Section 2.61 is being considered for repeal by the New York State DOH and therefore, "effective immediately, the Department will cease citing providers for failing to comply" with Section 2.61 while repeal is being considered.  N.Y. Dep't of Health, Letter on Enforcement of Section 2.61 (May 24, 2023) ("NY DOH May 24, 2023 Letter").[5]  However, such actions are prospective and the New York DOH continued on to state that "[t]he Department may . . . continue to seek sanctions against providers based on previously cited violations that allegedly occurred."  *Id.*

### III. Procedural History

Plaintiff filed a charge with the Equal Employment Opportunity Commission prior to his termination, Compl. ¶ 104, and received a Right to Sue letter on July 1, 2022, ECF No. 1-3. Plaintiff thereafter filed a five count Complaint on September 29, 2022.  *See* Compl.  Defendant filed a motion to dismiss the entire complaint on January 30, 2023.  *See* MTD.  Plaintiff opposed the motion on February 13, 2023 and voluntarily dismissed one of his claims.  *See* Opp. at 1 n.1. Defendant filed a reply on February 27, 2023.  *See* Reply.  Defendant's motion is therefore fully briefed and presently before the Court.[6]

---

[5] This letter was provided to the Court during the May 31, 2023 Conference.

[6] Neither party requested oral argument.  Furthermore, because the parties' briefing is comprehensive and oral argument would not assist the Court on the present record, the Court declines to hold oral argument.  *See AD/SAT, Div. of Skylight, Inc. v. Assoc. Press*, 181 F.3d 216, 226 (2d Cir. 1999) (stating that "a district court's decision whether to permit oral argument rests within its discretion" (citation omitted)).

**MOTION TO DISMISS STANDARD**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 72 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 680 (2009)).  The Court draws all reasonable inferences in the Plaintiff's favor and accepts as true all non-conclusory allegations of fact.  *Id.*  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.  A complaint must allege "more than a sheer possibility that a defendant has acted unlawfully" and more than "facts that are 'merely consistent with' a defendant's liability." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).  Determining whether a complaint states a claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.

**DISCUSSION**

Before the Court is Defendant's motion to dismiss the four remaining claims in the Complaint for failure to state a claim under Rule 12(b)(6).  Plaintiff currently asserts claims under (1) Title VII of the Civil Rights Act of 1964 for religious discrimination ("Title VII"); (2) 42 U.S.C. § 1983 for violations of the Free Exercise Clause of the First Amendment, as applied to the states through the Fourteenth Amendment; (3) Section 296 *et seq*. of New York State Executive Law prohibiting religious discrimination; and (4) New York City Administrative Code § 8-107 *et seq*. prohibiting religious discrimination.  Compl.  The Court will evaluate each in turn.

## I.   Title VII and New York State Human Rights Law Claims for Religious Discrimination

In support of his Title VII and New York State Human Rights Law ("NYSHRL") claims for religious discrimination (Counts I and IV), Plaintiff claims that Defendant, his employer, took adverse employment action against him – by placing him on unpaid leave and terminating his employment – because of Plaintiff's sincerely held religious beliefs.  Compl. ¶¶ 49, 50. Plaintiff claims that he informed Defendant that his religious beliefs prevented him from receiving the COVID-19 vaccination because, as a practicing Christian, he objected to receiving a vaccine that was "tested, developed, or produced with fetal cell lines derived from procured abortions."  *Id.* ¶ 20.  Plaintiff repeatedly requested a reasonable accommodation based on his religious beliefs, namely to be permitted to take a weekly COVID test instead of being vaccinated.  *Id.* ¶¶ 21, 44, 49.  According to Plaintiff, Defendant initially granted Plaintiff a religious accommodation.  *Id.* ¶ 23.  But a few days later, on September 14, 2021, Defendant revoked the accommodation, citing to the vaccine mandate in Section 2.61, placed Plaintiff on unpaid leave, and ultimately terminated his employment. *Id.* ¶¶ 24, 37, 50.  Plaintiff alleges that H+H discriminated against him based on his religion and failed to accommodate him in violation of Title VII and the NYSHRL.  *Id.* ¶¶ 52-55, 94.

### A.   Legal Standard

Title VII prohibits employers from discriminating against their employees with respect to "compensation, terms, conditions, or privileges of employment" based on protected classifications including religion.  42 U.S.C. § 2000e-2(a)(1).  "Religion" is defined to include "all aspects of religious observance and practice, as well as belief," and employers must "reasonably accommodate . . . an employee's . . . religious observance or practice" unless it would cause an "undue hardship on the conduct of the employer's business."  42 U.S.C.

§ 2000e(j); *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986) (employer meets obligation under Title VII if "it demonstrates that it has offered a reasonable accommodation to the employee"). If an employer is notified of a sincerely held religious belief, practice or observance, the employer "must offer the aggrieved employee a reasonable accommodation, unless doing so would cause the employer to suffer an undue hardship." *Cosme v. Henderson*, 287 F.3d 152, 158 (2d Cir. 2002).

The NYSHRL similarly provides that "it shall be an unlawful discriminatory practice" for an employer to discharge or discriminate against an employee "in compensation or in terms, conditions, or privileges of employment" because of the employee's "creed." N.Y. Exec. Law § 296(1)(a). Section 296(10)(a) further provides that:

> It shall be an unlawful discriminatory practice for any employer . . . to impose upon a person as a condition of . . . retaining employment . . . any terms or conditions that would require such person to violate or forego a sincerely held practice of his or her religion, . . . unless, after engaging in a bona fide effort, the employer demonstrates that it is unable to reasonably accommodate the employee's or prospective employee's sincerely held religious observance or practice without undue hardship on the conduct of the employer's business.

N.Y. Exec. Law § 296(10)(a).

Given the overlapping standards, the parties have addressed the Title VII and NYSHRL claims together and the Court will follow that approach. *See Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 n.7 (2d Cir. 2019) (noting that Second Circuit typically treats Title VII and NYHRL claims as "analytically identical, applying the same standard of proof to both claims"); *Salamon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 226 n.9 (2d Cir. 2008) (same).

### B. Application

Plaintiff claims that he was discriminated against based on his religion because H+H placed him on unpaid leave and fired him for refusing to be vaccinated against COVID-19 instead of accommodating him by allowing him to continue weekly COVID testing.  Compl. ¶¶ 23-26, 37-38, 43-45.

To establish a *prima facie* case of discrimination, a plaintiff must plead that (1) he is a member of a protected class, (2) he was qualified for his position, (3) he suffered an adverse employment action, and (4) he has pleaded facts that suggest an inference of a discriminatory motivation.  *Littlejohn v. City of New York,* 795 F.3d 297, 311 (2d Cir. 2015).  As the Second Circuit held in *E.E.O.C. v. Port Authority of New York and New Jersey*, on a motion to dismiss in the context of a discrimination claim, the complaint "need not allege facts establishing each element of a prima facie case of discrimination to survive a motion to dismiss," but it must assert at a minimum "nonconclusory factual matter" sufficient to "nudge" the claim "across the line from conceivable to plausible."  *E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002) and *Iqbal*, 566 U.S. at 680).

Defendant argues that there are no factual allegations in the Complaint that support an inference that H+H's adverse employment actions against Plaintiff were based on discrimination, rather than the application of a uniform mandatory vaccination policy pursuant to Section 2.61 that was implemented across the board on all personnel.  Br. at 12.  While this may be so, *see* Compl. ¶¶ 37, 40, 43; *D'Cunha v. Northwell Health Sys.*, No. 22-cv-0988 (MKV), 2023 WL 2266520, at *2 (S.D.N.Y. Feb. 28, 2023) (finding that plaintiff failed to plead facts giving rise to an inference of discrimination because her allegations were that the healthcare facility terminated

her because she failed to get vaccinated, rather than on the basis of her religion), the Court need not address this argument because the basis for Plaintiff's religious discrimination claim is that H+H revoked Plaintiff's prior religious accommodation of weekly testing and refused to re-grant such an accommodation.  Compl. ¶¶ 49, 52.  To establish a *prima facie* case of religious discrimination for failure to accommodate, Plaintiff must show that (1) he held a "bona fide religious belief conflicting with an employment requirement"; (2) he informed his employer of this belief; and (3) he was "disciplined for failure to comply with the conflicting employment requirement."  *Knight v. Conn. Dep't of Pub. Health*, 275 F.3d 156, 167 (2d Cir. 2001).  If the *prima facie* case is shown, "the burden then shifts to the employer to show it could not accommodate the employees' religious beliefs without undue hardship."  *Id.*

Plaintiff alleges that he informed Defendant of his bona fide religious belief that conflicted with H+H's COVID-19 vaccination requirement.  He alleges that after H+H informed Plaintiff that he had to be vaccinated against COVID-19 on September 8, 2021, Plaintiff advised H+H that, as a practicing Christian, his sincerely held religious beliefs prevented him from receiving "a COVID-19 vaccine that was tested, developed, or produced with fetal cell lines derived from procured abortions."  Compl. ¶¶ 19-20.  Drawing all reasonable inferences in Plaintiff's favor, these allegations are sufficient to assert the first two prongs of a plausible *prima facie* case of discrimination.

Plaintiff then claims that H+H accepted his request for an accommodation of weekly testing initially, but four business days later, on September 14, 2021, H+H advised Plaintiff that he would not be accommodated and placed him on unpaid leave.  Compl. ¶¶ 21-24.  Plaintiff alleges that he requested the religious accommodation again toward the end of his unpaid leave, but no accommodation was granted and his employment was terminated for failure to comply

with the mandatory vaccination requirement.  Compl. ¶¶ 43-45.  Allegations of termination of

employment for failure to comply with the conflicting employment requirement of mandatory

vaccination are sufficient to plead the final element of the *prima facie* case of religious

discrimination for failure to accommodate.  *See, e.g.*, *Zelnick v. Fashion Inst. Tech.*, 464 F.3d

217, 225 (2d Cir. 2006) (termination qualifies as adverse employment actions for purposes of

Title VII claims); *see also Corrales v. Montefiore Med. Ctr.*, No. 22-cv-3219 (LAP), 2023 WL

2711415, at *5-6 (S.D.N.Y. Mar. 30, 2023) (finding prima facie case for failure to accommodate

religious discrimination claim pled where plaintiff alleged that she had a bona fide religious

belief that conflicted with the COVID-19 vaccination requirement, informed her healthcare

employer of it, and her employment was terminated).  Defendant does not dispute that Plaintiff

has pleaded these three elements and instead focuses on whether Defendant has shown that

reasonably accommodating Plaintiff would cause H+H an undue hardship.  Br. at 13-14.

The Court agrees that granting Plaintiff a religious exemption from the mandatory

vaccination requirement or permitting regular COVID testing in lieu of vaccination would cause

Defendant an undue hardship because it would require Defendant to violate a state rule, Section

2.61.  Br. at 14.  Section 2.61 does not contain a general religious exemption, just like other state

vaccination regulations such as for measles and rubella.  *See We The Patriots, USA,* 17 F.4th at

282 (citing 10 N.Y.C.C.R.R. §§ 405.3, 415.26, 751.6, 763.13, 766.11, 794.3, 1001.11).  Plaintiff

does not dispute that H+H is a covered healthcare entity for purposes of Section 2.61.  Even

though Plaintiff does not work with patients, Plaintiff qualifies as "personnel" for purposes of

Section 2.61, given that he admittedly worked on site at H+H with co-workers.  Compl. ¶¶ 15-

16; 10 N.Y.C.R.R. § 2.61 (personnel defined as those who "engage in activities such that if they

were infected with COVID-19, they could potentially expose other covered personnel, patients or

residents to the disease"); *Corrales*, 2023 WL 2711415, at *2, *6 ("receptionist in executive offices" of the hospital who "did not interact with hospital patients" covered by Section 2.61); *Andre-Rodney v. Hochul*, 618 F. Supp. 3d 72, 78 (N.D.N.Y. 2022) (security officers who worked at hospitals covered by Section 2.61). Plaintiff finally does not allege that he qualifies for a medical exemption. Therefore, exempting Plaintiff from the mandatory vaccination requirements of Section 2.61 would violate the state rule, which would necessarily create an undue hardship on H+H. *See, e.g.*, *Bey v. City of New York*, 999 F.3d 157, 170 (2d Cir. 2021) ("Title VII cannot be used to require employers to depart from binding federal regulations").

Courts have repeatedly dismissed Title VII claims brought against healthcare employers with a mandatory COVID-19 vaccination requirement because providing the sought religious exemption would create an undue hardship on the employer who would be in violation of the state rule. *See Riley v. N.Y.C. Health and Hosps. Corp.*, No. 22-cv-2736 (JGK), 2023 WL 2118073, at *4 (S.D.N.Y. Feb. 17, 2023) (dismissing Title VII claim by plaintiff seeking religious exemption from mandatory COVID vaccination policy because "Title VII cannot be used to require employers to break the law"); *Dennison v. Bon Secours Charity Health Sys. Med. Grp., P.C.*, No. 22-cv-2929 (CS), 2023 WL 3467143, at *5-6 (S.D.N.Y. May 15, 2023) (dismissing Title VII claim because defendants would be violating the State Mandate by providing religious exemption, "thus suffering an undue hardship"); *Does 1-2 v. Hochul*, ____ F. Supp. 3d. _____, No. 21-cv-5067 (AMD) (TAM), 2022 WL 4637843, at *15 (E.D.N.Y. Sept. 30, 2022) (religious exemption to mandatory vaccination polity would impose undue hardship as a matter of law where it would require defendant to violate state rule, Section 2.61); *Shahid-Ikhlas v. N.Y. Presbyterian Hosp., Inc.*, 2023 WL 3628151 (GHW) (SDA), at *5 (S.D.N.Y. May 24, 2023) ("It is well established that Defendant would suffer an undue hardship as a matter of

law if it was required to accommodate Plaintiff by exempting Plaintiff from the vaccine requirement, while allowing her to perform work that would require her to be vaccinated under the Mandate, because such accommodation would require Defendant to violate the law.") (recommendation adopted by *Shahid-Ikhlas v. N.Y. Presbyterian Hosp., Inc.*, No. 22-CV-10643 (GHW)(SDA), 2023 WL 3626435, at *1 (S.D.N.Y. May 24, 2023)); *D'Cunha*, 2023 WL 2266520, at *3 (dismissing Title VII claim regarding mandatory COVID-19 vaccination because accommodation of exempting her from the vaccination would create undue hardship).

Plaintiff's continued emphasis on his requests for an *accommodation*, rather than a religious *exemption*, does not change the analysis here given that the accommodation sought was continued weekly testing. *See, e.g.*, Compl. ¶¶ 21, 23, 27, 35. The Second Circuit has held that religious accommodations are possible under Section 2.61 if the employer accommodates "employees with religious objections, by employing them in a manner that removes them from the Rule's definition of 'personnel.'" *We The Patriots,* 17 F.4th at 370. A weekly testing accommodation, the only accommodation requested by Plaintiff as alleged in the Complaint, would not remove Plaintiff from the scope of Section 2.61 because Plaintiff would have continued working on site at H+H with co-workers;  therefore, he would be "engag[ing] in activities such that if [he was] infected with COVID-19, [he] could potentially expose other covered personnel . . . to the disease."  Section 2.61 (defining "personnel").  In *Dennison*, for example, the Court evaluated a Title VII claim by plaintiff healthcare workers who sought a religious exemption from the mandatory COVID-19 vaccination mandate.  *Dennison*, 2023 WL 3467143, at *1.  Just as in the case at hand, the plaintiffs requested that they be accommodated by engaging in other protocols such as regular COVID testing.  *Id.* at *2, *5 & n.4.  The Court dismissed the Title VII claim and held that the religious accommodation sought was a blanket

exemption from the vaccination requirement that created an undue hardship for the healthcare

entity because it would require them to violate the state mandate.  *Id.* at \*5-7.

As the Second Circuit has stated, "Title VII does not require covered entities to provide

the accommodation that Plaintiffs prefer – in this case, a blanket religious exemption allowing

them to continue working at their current positions unvaccinated."  *We The Patriots USA*, 17

F.4th at 292; *see also Marte v. Montefiore Med. Ctr.*, 22-cv-03491 (CM), 2022 WL 7059182, at

\*4 (S.D.N.Y. Oct. 12, 2022) (finding unreasonable and undue hardship to accommodate plaintiff

who was willing to continue taking precautions (*Marte* Compl. ¶ 16) to continue in her position

unvaccinated); *Corrales*, 2023 WL 2711415, at \*7 (dismissing Title VII and NYSHRL claims by

plaintiff who had been complying with testing (*Corrales* Compl. ¶ 32) and sought to continue

working unvaccinated because defendant could not have granted religious exemption without

causing undue hardship).  Furthermore, tracking compliance with testing, permitting Plaintiff to

potentially expose other workers at H+H to the COVID-19 virus, and facing legal consequences

if someone should be infected with COVID-19 due to exposure from Plaintiff, are all significant

hardships that create an undue burden on Defendant with the requested accommodation.  *See*

*Does 1-2*, 2022 WL 4637843, at \*16 n.28 (finding undue hardship on motion to dismiss where

plaintiff sought exemption from COVID-19 vaccination in part because defendants could face

legal liability if those exposed to an unvaccinated employee were to contract COVID); *Dennison*,

2023 WL 3467143, at \*6 n.7 (finding hardship from "increased health and safety risk posed to

other employees and patients by allowing Plaintiffs to remain unvaccinated while working at

their respective facilities").

In response, Plaintiff repeatedly states that the motion to dismiss should be summarily

denied because courts have held that Section 2.61 is "unconstitutional" and, therefore, "this court

must review H+H's motion as if Section 2.61 never existed at all." Opp. Br. at 4-5, 7, 9, 14. The Court does not agree. Contrary to Plaintiff's blanket assertions, the Second Circuit has rejected constitutional challenges to Section 2.61. *See We The Patriots USA,* 17 F.4th at 290, 293.

The Court will address Plaintiff's specific arguments in turn. First, Plaintiff's reliance on a district court decision in the Northern District of New York, *Dr. A v. Hochul*, 2021 WL 4734404, that preliminarily enjoined the enforcement of Section 2.61 in the fall of 2021 when actions were being taken with respect to Plaintiff's employment is unavailing. Compl. ¶¶ 39-41. As the *Dennison* court held in rejecting the same argument, the district court's *preliminary* ruling did not mean that other employers "were free, let alone required, to ignore the State Mandate" because this would nonsensically require employers to "accurately predict the outcome of litigation in order to avoid liability for discrimination on the one hand, or [take on] liability for violating state law on the other." *See Dennison*, 2023 WL 3467143, at *5, n.5. Indeed, the preliminary ruling in *Dr. A,* which was directly contrary to the denial of such relief in *We The Patriots USA*, 2021 WL 4048670, was promptly vacated by the Second Circuit who found that the State had showed that the *Dr. A* plaintiffs were unlikely to succeed in showing that Section 2.61 violated the Free Exercise Clause of the First Amendment, Title VII, or the Fourteenth Amendment. *We The Patriots USA,* 17 F.4th at 290, 293; *see supra* at 5-8.

Second, Plaintiff's reliance on *Bassett*, a New York Supreme Court decision that found that the DOH exceeded its authority in promulgating Section 2.61, is misplaced. *Bassett*, 185 N.Y.S.3d at 585. First, that decision was not issued until January 13, 2023 and therefore H+H was obliged to follow Section 2.61 at the time that employment actions were taken with respect to Plaintiff in 2021. Second, the *Bassett* decision was immediately appealed and enforcement of the lower court *Bassett* decision has been stayed by the Fourth Department pending the appeal.

Exhibit, *Dennison*, 7:22-cv-02929 (CS), ECF No. 38-1.  Therefore, the *Bassett* decision currently

does not render Section 2.61 unenforceable.  Third, the May 24, 2023 letter from the DOH

stating that, effective immediately, the DOH will not enforce Section 2.61 prospectively while

repeal is being contemplated,  NY DOH May 24, 2023 Letter, does not change the fact that

Section 2.61 was in force and effect in 2021 at the time of the employment actions with respect

to Plaintiff.  Indeed, the DOH expressly states that its decision to refrain from further

enforcement of the rule does not impact the DOH's treatment of "previously cited violations."

*Id.*; *see Dennison*, 2023 WL 3467143, at *6 n.8 (rejecting argument that Onondaga Supreme

Court decision in *Bassett* prevented dismissal of the religious discrimination claims for failure to

provide a religious exemption to mandatory vaccination requirement because the *Bassett*

decision is nonbinding, was promptly stayed by the Appellate Division, and "has no bearing on

the actions of Defendants in 2021").

Plaintiff also argues that permitting him to remain in his position unvaccinated cannot be

considered an undue hardship or a violation of Section 2.61 because H+H did not fire Plaintiff

"for two months after the alleged deadline by which he was 'required' to become vaccinated."

Opp. Br at 7-8.  Plaintiff was placed on unpaid leave in September 2021 when he would not

follow H+H's mandatory vaccination policy pursuant to Section 2.61. Compl. ¶¶ 37-38, 42.

During his unpaid leave, Plaintiff was told that he needed to be vaccinated before he could return

to work at the end of the unpaid leave period, set to expire on November 26, 2021.  *Id.* ¶ 43.

Plaintiff did not comply with the policy and his employment was terminated on November 29,

2021.  *Id.* ¶ 45.  That Plaintiff was not immediately terminated from his position and was

afforded time to come into compliance with the mandatory policy as an accommodation does not

undermine the fact that allowing Plaintiff to return to work unvaccinated would have been a violation of Section 2.61 and therefore created an undue hardship for H+H.

For all of these reasons, Plaintiff's Title VII and NYSHRL claims are dismissed.

## II. New York City Administrative Code Claim for Religious Discrimination

Plaintiff next claims in Count V that H+H engaged in unlawful religious discrimination in violation of the New York City Administrative Code, § 8-107, again citing the failure to provide him with a religious accommodation to the vaccination requirement. *Id.* ¶¶ 104-07.

The New York City Human Rights Law ("NYCHRL") prohibits discrimination based on the actual or perceived "creed" of any person. N.Y.C. Admin. Code, § 8-107(1). It further states that:

> [i]t shall be an unlawful discriminatory practice for an employer . . . to impose upon a person as a condition of obtaining or retaining employment any terms or conditions, compliance with which would require such person to violate, or forego a practice of, such person's creed or religion . . . and the employer shall make reasonable accommodation to the religious needs of such person.

*Id.* § 8-107(3)(a). A reasonable accommodation under the NYCHRL is an "accommodation to an employee's . . . religious observance or practice" that does not cause an "undue hardship" to the employer. *Id.* § 8-107(3)(b). "Undue hardship" is defined as "accommodation requiring significant expense or difficulty," including "significant interference with the safe or efficient operation of the workplace." *Id.*

The same Title VII two-step framework is used to evaluate a NYCHRL claim for religious discrimination for failure to accommodate. To make out a *prima facie* case under NYCHRL, Plaintiff must demonstrate that "(1) he has a bona fide religious belief that conflicts with an employment requirement; (2) he informed the employer of his belief; and (3) he was disciplined for failure to comply with the conflicting employment requirement." *Price v.*

*Cushman & Wakefield, Inc*., 829 F. Supp. 2d 201, 222 (S.D.N.Y. 2011).  An employer must thereafter provide a "reasonable accommodation for the religious needs of an employee affected by a condition of employment."  *Hamilton v. City of New York*, 563 F. Supp. 3d 42, 58 (E.D.N.Y. 2021).  However, NYCHRL claims must be analyzed separately from federal and state claims, with the NYCHRL construed "more liberally" than state and federal law and "broadly in favor of discrimination plaintiffs."  *Owens v. City of New York Dep't of Educ*., No. 21-2875, 2022 WL 17844279, at *2 (2d Cir. Dec. 22, 2022); *Mihalik v. Credit Agricole Cheuvreux N. Am. Inc*., 715 F.3d 102, 109, 113 (2d Cir. 2013).

Even applying a more liberal construal, for the reasons discussed earlier, requiring Defendant to violate the State Mandate by exempting Plaintiff from the mandatory vaccination requirement through a testing accommodation creates an undue hardship on Defendant given that it would require Defendant to violate a state rule.  Moreover, as noted above, it would significantly interfere with the safe and efficient operation of the workplace.  *See Corrales*, 2023 WL 2711415, at *8-9 (dismissing religious discrimination claim under NYCHRL for failure to provide a religious exemption to the COVID-19 mandatory vaccination policy of the hospital because it "would have caused Montefiore to violate state law").[7]

---

[7] Plaintiff includes errant references in his Complaint to aiding and abetting with respect to his claims under the NYSHRL and NYCHRL. Compl. ¶¶ 95, 105.  Defendant argues in its motion to dismiss that insofar as these allegations can be construed as a claim for aiding and abetting, such a claim must be dismissed because it only applies to individual defendants and there can be no such claim if no discrimination is found.  Br. at 15.  Plaintiff does not object or provide any response at all.  Therefore, any purported claim for aiding and abetting is dismissed.  *See Felix v. City of New York*, 344 F. Supp. 3d 644, 654-55 (S.D.N.Y. 2018) (finding that a claim is deemed waived where a plaintiff fails to defend the theory in the opposition to defendant's motion to dismiss).

### III. Claim under 42 U.S.C. § 1983 for a Violation of the Free Exercise Clause of the First Amendment

In Count II, Plaintiff brings a claim under 42 U.S.C. § 1983 ("Section 1983") alleging that H+H's mandatory vaccination policy (and failure to provide a religious accommodation) violates the Free Exercise Clause of the First Amendment because it infringes on Plaintiff's right to freely exercise his sincerely held religious beliefs that prevent him from being vaccinated. Compl. ¶¶ 62-64, 66, 68.  Defendant moves to dismiss this claim alleging that the H+H policy, based on Section 2.61, is not unconstitutional because it is a neutral and generally applicable policy with a rational basis.  Br. at 15-18.

#### A.  Legal Standard

Section 1983 provides that:

> "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . ."

42 U.S.C. § 1983.  To state a claim under Section 1983, the Plaintiff must allege a violation of a federal law or constitutional right by a person or entity acting under state law.  *Feingold v. New York,* 366 F.3d 138, 159 (2d Cir. 2004).  Plaintiff has alleged action under color of state law given that Defendant H+H is a public benefit corporation.  *Riley*, 2023 WL 2118073, at *5 n.7 (holding that NYC H+H is a proper defendant for Section 1983 claim because it is a local governmental entity).

The Free Exercise Clause of the First Amendment "protects an individual's private right to religious belief, as well as 'the performance of (or abstention from) physical acts that constitute the free exercise of religion.'"  *Kane v. DeBlasio*, 19 F.4th 152, 163-64 (2d Cir. 2021)

(internal citation omitted).  The protection "does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability."  *Emp. Div., Dep't of Hum. Res. v. Smith*, 494 U.S. 872, 879 (1990) (internal citation and quotation marks omitted).  A neutral law of general applicability is evaluated under a rational basis review but policies or laws that are not neutral or generally applicable are subject to strict scrutiny and must be narrowly tailored to serve a compelling state interest.  *Kane*, 19 F.4th at 164 (citing *Roman Cath. Dioceses of Brooklyn v. Cuomo*, ___ U.S. ____, 141 S. Ct. 63, 67 (2020); *Fulton v. City of Philadelphia*, ___ U.S. ____, 141 S. Ct. 1868, 1881 (2021)).

### B.  Application

Defendant moves to dismiss Count II because the H+H policy based on Section 2.61 is a neutral policy of general applicability and has a rational basis.  Br. at 15-18.  Before addressing the constitutional inquiry, as a threshold matter, Plaintiff responds first that Section 2.61 is "invalid as a matter of law" and therefore his Free Exercise claim "must prevail as a matter of law."  Opp. Br. at 8-9.  As stated previously, Section 2.61 is not invalid given that the *Bassett* decision that found it to be *ultra vires* has been stayed and is currently on appeal.  *See supra* at 7-8.  Moreover, the 2023 *Bassett* decision was not issued until well after the H+H policy was applied to Plaintiff and the adverse employment actions were taken in 2021.  Therefore, Plaintiff's claim that his Free Exercise claim is established because the H+H policy as applied to him was based on an invalid state rule is rejected.

Plaintiff also objects to the application of the *Smith* standard for constitutional scrutiny, citing to Justices Alito and Barrett's concurring opinions in *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1889 (2021), expressing that *Smith* should be reconsidered.  *Id.* at 1889 (Alito, J., concurring); *id.* at 1882-83 (Barrett, J. concurring).  Opp. Br. at 10.  Plaintiff claims that strict

scrutiny should instead be applied.  Opp. Br. at 10-11.  This Court is compelled to apply binding precedent of the Supreme Court unless and until it is overruled as well as Second Circuit precedent which has applied the *Smith* standard to the evaluation of Section 2.61 in light of a Free Exercise challenge.  *See We The Patriots USA*, 14 F.4th at 280.  Therefore, the Court will not apply strict scrutiny if Section 2.61 is a neutral law of general applicability.

### 1.  Neutrality

Moving to the first part of the assessment, in evaluating whether a law is neutral, courts examine whether it "discriminates against some or all religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons." *Church of Lukimi Babalu Aye, Inc. v. Hilaeh*, 508 U.S. 520, 532 (1993).  The "minimum requirement of neutrality is that a law not discriminate on its face," but laws may also violate neutrality requirements as applied if they "target[] religious conduct for distinctive treatment." *Id.* at 533-34.

As the Second Circuit has held: "Section 2.61 is facially neutral because it does not single out employees who decline vaccination on religious grounds. It applies to all 'personnel,' as carefully defined in the Rule, aside from those who qualify for the narrowly framed medical exemption." *We The Patriots USA*, 17 F.4th at 281; *see also Does 1-2*, 2022 WL 4637843, at *9 (holding that "Section 2.61 is neutral on its face").  The vaccination requirement restricts all covered medically eligible individuals regardless of why they wish to remain unvaccinated.

Nor has Plaintiff pleaded facts that support that Section 2.61 targets those who oppose the vaccination on religious grounds or indicate even a "slight suspicion of religious animosity." *New Hope Fam. Servs. v. Poole*, 966 F.3d 145, 165 (2d Cir. 2020) (internal citation and quotation marks omitted).  Plaintiff has not pleaded, nor argued, any facts that suggest that the purpose of the rule was to suppress or discriminate against religion, rather than to protect the

workers in healthcare entities and those interacting with them from a highly contagious and potentially fatal virus.  *Does 1-2*, 2022 WL 4637843, at \*9-10 (holding that Section 2.61 does not target the exercise of religion or demonstrate religious animus).

Plaintiff argues that Section 2.61 directly targets religious persons because the initial order on August 18, 2021 by the Health Commission included a religious exemption but the City thereafter "intentionally eliminated the religious accommodation from the final rule, days later, while maintaining medical exemptions."  Opp. Br. at 12.

The Second Circuit rejected this precise argument in *We The Patriots USA,* 17 F.4th at 282-83.  As the Second Circuit explained, on August 18, 2021, eight days before Section 2.61 was promulgated by the Council, the New York State Commissioner issued an Order for Summary Action under the power vested in him by Public Health Law §16 to issue orders (valid for up to 15 days) to address conditions that in his view are a "danger to the health of the people."  *Id.* at 275 (quoting N.Y. Pub. Health Law § 16).  The Commissioner's emergency August 18, 2021 order ("August 18 Order") required certain healthcare facilities (more limited than those covered by Section 2.61) to ensure certain personnel were vaccinated for COVID-19 and contained a religious exemption.  *Id.*

The Second Circuit found that the fact "that the August 18 Order contained a religious exemption, [while] Section 2.61 does not, falls short of rendering Section 2.61 non-neutral."  *Id.* at 282.  The court evaluated the extensive vetting process for Section 2.61 that ultimately resulted in a rule that applied to a broader set of healthcare entities and did not contain a religious exemption "consistent with the State's highly effective existing vaccine requirements for measles and rubella (issued with no religious exemption)."  *Id.* (citing to 10 N.Y.C.C.R.R. §§ 405.3, 415.26, 751.6, 763.13, 766.11, 794.3, 1001.11).  The court also noted the many changes that had

occurred between August 18, 2021 and the enactment of Section 2.61, including a new governor,

the FDA approval of a vaccine for those 16 and older, and the intense spread of the Delta variant

of the virus.  *Id.* at 283.  The Second Circuit concluded that: "[e]ven if the differing August 18

and August 26 requirements can be said to represent a shift in the State's policy position,

Plaintiffs have not adduced facts establishing that the change stemmed from religious

intolerance, rather than an intent to more fully ensure that employees at healthcare facilities

receive the vaccine in furtherance of the State's public health goals."  *Id.*  Therefore, the Second

Circuit concluded that this change from the August 18 order did not demonstrate that Section

2.61 was non-neutral.  *Id.* at 283-84.

Similarly, in *Does 1-2*, the court rejected this argument against neutrality, noting that the

Council's ultimate decision not to include a religious exemption in Section 2.61 comported with

the New York vaccine regulations that require measles and rubella vaccinations without religious

exemptions.  2022 WL 4637843, at *10.  Citing changes in circumstances as well as the

extensive vetting process involving a larger deliberative body and public comment, the *Does 1-2*

court concluded, in the context of a motion to dismiss, that "the plaintiffs ha[d] not alleged any

facts demonstrating the State was motivated by anything other than the concerns that motivated

the State to enact these earlier vaccination requirements: protecting the public—in this case

healthcare workers, hospital patients and elderly residents of nursing homes—from exposure to a

highly contagious and potentially fatal infection."  *Id.*  Similarly, here, Plaintiff has not alleged

any facts from which religious targeting or animus can be inferred and the Court therefore rejects

Plaintiff's argument that the earlier emergency order supports a finding of non-neutrality, let

alone is "unequivocal" evidence that Section 2.61 "intended to single out religion for disfavored

treatment," as Plaintiff asserts.  Opp. Br. at 12; *see Riley*, 2023 WL 2118073, at *5 (finding

vaccination mandate to be neutral because no facts were plead that suggested that the mandate singles out a religious practice or disparately targets religious conduct).

### 2.  General Applicability

Moving next to general applicability, a law may not be generally applicable if it (1) "invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions," or (2) "prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *We The Patriots USA*, 17 F.4th at 284 (quoting *Fulton*, 141 S. Ct. at 1877).  Defendant argues that Section 2.61 is generally applicable because it "applies to everyone who can safely receive the vaccine."  Br. at 17.  Citing to *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021), and *Cuomo*, 141 S. Ct. at 67, Plaintiff argues that Section 2.61 is not generally applicable because it targets religious conduct but not comparable secular conduct given that "unvaccinated individuals who assert a religious exemption pose the same risks that unvaccinated individuals who assert a medical exemption do."  Opp. Br. at 13-14.  In other words, Plaintiff argues, unvaccinated individuals with a medical exemption are just as likely to expose patients or coworkers to COVID-19 as those who wish to remain unvaccinated for religious reasons and therefore they pose the "same risk of harm" to governmental interests.  *Id.*  Thus, according to Plaintiff, Section 2.61 treats comparable secular activity more favorably than religious exercise, and strict scrutiny should apply.  *Id.*

Again, this precise argument was raised before and rejected by the Second Circuit, albeit in the context of evaluating likelihood of success on a Free Exercise claim.  *We The Patriots USA*, 17 F.4th at 284-88.  The Second Circuit looked to the interests articulated by the State in adopting Section 2.61, which are not limited to solely separating patients from exposure to

unvaccinated individuals as Plaintiff asserts.  The State's interest include: (1) "prevent[ing] the spread of COVID-19 in healthcare facilities among staff, patients, and residents;" and (2) "by protecting the health of healthcare employees to ensure they are able to continue working, it aims to reduce the risk of staffing shortages that can compromise the safety of patients and residents even beyond a COVID-19 infection."  *Id.* at 285.  Therefore, the Second Circuit noted that "applying the Rule to those who oppose vaccination on religious grounds furthers the State's asserted interests, whereas applying the Rule to those subject to medical contraindications or precautions based on pre-existing conditions would undermine the government's asserted interest in protecting the health of covered personnel."  *Id.*  In other words, applying the vaccination requirement to those with medical contraindications would not advance the governmental interest in protecting the health of the workforce and allow them to continue working.  *Id.*; *Does 1-2*, 2022 WL 4637843 at *11 ("It is self-evident that requiring an employee to be vaccinated even if the employee has a documented medical condition that makes vaccination unsafe would not promote the State's interest in protecting healthcare workers.").  Requiring those with medical contraindications to be vaccinated also runs counter to the State's interest in protecting the health and welfare of its citizenry.  Indeed, the Supreme Court has long acknowledged that a state may not be permitted to require vaccinations of those with contraindications or if it would "seriously impair [their] health."  *See Jacobson v. Massachusetts*, 197 U.S. 11, 39 (1905) (upholding constitutionality of vaccine mandate during smallpox outbreak); *see also Philips v. City of New York*, 775 F.3d 538, 543 (2d Cir. 2015) (per curiam) (holding that mandatory vaccination for chicken pox during the chicken pox outbreak as a condition for admission to school does not violate Free Exercise Clause).  The Second Circuit also pointed out that the risks associated from the exemptions are not comparable because a medical exemption may be limited

in duration, given that the exemption only lasts until "such immunization is found no longer to

be detrimental to such personnel member's health," 10 N.Y.C.R.R. § 2.61(d)(1), whereas a

religious exemption could be permanent, *We The Patriots USA*, 17 F.4th at 286.  In rejecting this

argument and dismissing a Free Exercise claim, the *Does 1-2* court also held that Section 2.61

does not single out religious employees – it "applies equally to all employees who can be

vaccinated safely, regardless of their religious beliefs or practices, whether they have political

objections to the vaccine, or question [its] efficacy or safety, or any of the many other reasons

that people choose not to get vaccinated." *Does 1-2*, 2022 WL 4637843, at *12.  The Court

agrees with the foregoing analyses.  Plaintiff has failed to allege facts that support that Section

2.61 is not generally applicable based on comparability.  *See id.* at *11-12 (holding on a motion

to dismiss that "plaintiffs have not demonstrated that Section 2.61's medical exemption and the

religious exemption they seek are comparable").

### 3.  Rational Basis Review

Given that Plaintiff has not shown that Section 2.61 is not neutral or generally applicable,

rational basis review applies, and it need only be "rationally related" to a legitimate government

interest.  *We The Patriots* USA, 17 F.4th at 290.  The Court agrees with the Second Circuit's

assessment that Section 2.61 "easily" meets this constitutional review hurdle.  *Id.*  This rule

serves a legitimate government interest of protecting public health and safety by protecting

patients and those working in health care facilities from increased risk of COVID-19.  As the

Second Circuit so aptly stated back in 2021:

> Faced with an especially contagious variant of the virus in the
> midst of a pandemic that has now claimed the lives of over
> 750,000 in the United States and some 55,000 in New York, the
> State decided as an emergency measure to require vaccination for
> all employees at healthcare facilities who might become infected
> and expose others to the virus, to the extent they can be safely

> vaccinated. This was a reasonable exercise of the State's power to
> enact rules to protect the public health.

*Id.* Other courts are in accord. *Riley*, 2023 WL 2118073, at *6 (dismissing Free Exercise claim

because vaccine mandate easily meets the rational review standard); *Does 1-2*, 2022 WL

4637843, at *13-14 (same).

## IV. Leave to Amend

The complaint will be dismissed with prejudice. Although Rule 15(a)(2) provides that

leave to amend shall be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), Plaintiff

did not seek to amend the complaint in response to Defendant's motion to dismiss with

prejudice. There is further no indication as to how Plaintiff might cure the pleading deficiencies

given the lack of facts, and legal support, to maintain the claims here. Therefore, the Court

declines to grant leave to amend *sua sponte.* *See Gallop v. Cheney*, 642 F.3d 364, 369-70 (2d

Cir. 2011) (holding that district court did not err by dismissing claim with prejudice "in the

absence of any indication that [plaintiff] could – or would – provide additional allegations that

might lead to a different result"); *Anatian v. Coutts Bank (Switzerland) Ltd.*, 193 F.3d 85, 89 (2d

Cir. 1999) (holding that it was not an abuse of discretion for district court to dismiss a case with

prejudice where leave to amend was not sought and there was no showing of how the pleading

deficiencies could be cured in light of the "insufficiency of facts to support a claim"); *Shahid-*

*Ikhlas*, 2023 WL 3626435, at *1 (adopting recommendation of Magistrate Judge and dismissing

with prejudice Title VII claim based on application of COVID-19 mandatory vaccination

policy), adopting report and recommendation at *Shahid-Ikhlas*, 2023 WL 3628151, at *6 & n.10.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED.  The Complaint

is dismissed with prejudice.  The Court of Clerk is respectfully directed to close the case.

Dated: June 23, 2023
      New York, New York             SO ORDERED.

                                        JENNIFER L. ROCHON
                                        United States District Judge